2016-1357

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

—————————————

ARCELORMITTAL and
ARCELORMITTAL ATLANTIQUE ET LORRAINE,

Plaintiffs-Appellants,

v.

AK STEEL CORPORATION, SEVERSTAL DEARBORN, INC. and
WHEELING-NISSHIN INC.,

Defendants-Appellees.

—————————————

Appeal from the United States District Court for the District of
Delaware in Case No. 1:10-cv-0050-SLR,
Judge Sue L. Robinson.

————————————————————

## BRIEF OF DEFENDANTS-APPELLEES

————————————————————

Christopher N. Sipes
Roderick R. McKelvie
Jeffrey H. Lerner
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC  20001
(202) 662-6000
*Attorneys for Defendants-Appellees*

# CERTIFICATE OF INTEREST

Counsel for the Defendants-Appellees certifies the following:

**1. The full name of every party or amicus represented by me is:**

AK Steel Corporation
Severstal Dearborn, Inc.
Wheeling-Nisshin Inc.

**2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:** N/A

**3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:**

AK Steel Corporation is a wholly owned subsidiary of AK Steel Holding Corporation, a publicly traded company (New York Stock Exchange symbol AKS).

Severstal Dearborn, Inc. was converted to Severstal Dearborn, LLC and merged with AK Steel Corporation pursuant to Section 264(c) of the General Corporation Law of the State of Delaware, with AK Steel Corporation as the surviving corporation. AK Steel Corporation is a wholly owned subsidiary of AK Steel Holding Corporation, a publicly traded company (New York Stock Exchange symbol AKS).

Wheeling-Nisshin Inc. is a wholly owned subsidiary of Nisshin Steel Co., Ltd., a Japanese corporation publicly traded in Japan (Code Number: 5407 on the Tokyo, Osaka, Nagoya, and Fukuoka stock exchanges).

**4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:**

Covington & Burling LLP: Roderick R. McKelvie, Christopher N. Sipes, Jeffrey H. Lerner, Maureen M. Japha*, Sarah J. Smith*

Young, Conaway, Stargatt & Taylor, LLP: Adam W. Poff, Pilar Gabrielle Kraman, Monte Terrell Squire**, Megan C. Haney**

Kuzman Law Office, LLC: John J. Kuzman, Jr.

Ashby & Geddes: Tiffany Geyer-Lydon, Steven J. Balick

Reising Ethington, PC: David J. Simonelli, Richard W. Hoffmann

\* no longer at Covington & Burling LLP
\*\*no longer at Young, Conaway, Stargatt & Taylor, LLP

Date: April 28, 2016                              /s/ Christopher N. Sipes

                                                 Christopher N. Sipes
                                                 **COVINGTON & BURLING LLP**
                                                 One CityCenter
                                                 850 Tenth Street, NW
                                                 Washington DC 20001-4956
                                                 (202) 662-6000

                                                 *Attorney for Defendants-Appellees*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF CONTENTS ..................................................................... iii

TABLE OF AUTHORITIES .................................................................. vi

STATEMENT OF RELATED CASES ...................................................... x

COUNTER JURISDICTIONAL STATEMENT ........................................ 1

COUNTERSTATEMENT OF THE ISSUES ............................................. 1

INTRODUCTION .............................................................................. 3

COUNTERSTATEMENT OF THE CASE................................................. 9

    I.    *ArcelorMittal I*.................................................................. 9

    II.    Trial Court Proceedings Following Remand in *ArcelorMittal I*.............................................................. 13

        A.    The RE153 Patent............................................. 13

        B.    The 685 and 686 Cases ..................................... 14

        C.    The First Remand in the 050 Case ..................... 15

    III.    *ArcelorMittal II* ........................................................ 18

    IV.    Events Following the Second Appeal .................................. 21

        A.    The RE940 Patent............................................. 21

        B.    The Second Remand ......................................... 22

SUMMARY OF THE ARGUMENT ....................................................... 27

STANDARD OF REVIEW................................................................... 30

ARGUMENT ................................................................................... 31

I.    The District Court Properly Exercised Jurisdiction Over
      Claims 24 And 25 ....................................................................... 31

      A.    ArcelorMittal Is Bound by Its Representations to
            This Court That Claims 24 and 25 of the RE153
            Patent Were Part of the 050 Case ....................................... 33

      B.    Claims 24 and 25 Were Properly Substituted
            Pursuant to Section 252 of the Patent Act ........................... 38

II.   ArcelorMittal's Belated, Conditional Covenant Not to Sue
      Did Not Divest the Court of Subject Matter Jurisdiction ............ 42

      A.    ArcelorMittal Failed to Meet Its Burden Before the
            District Court ...................................................................... 43

      B.    ArcelorMittal's Conditional Covenant Did Not Moot
            the Parties' Dispute Over the RE153 Patent ........................ 46

      C.    ArcelorMittal's Covenant Was Both Too Late and
            Too Narrow To Moot the Case ............................................. 51

            1.    ArcelorMittal's Covenant, Offered on the Cusp
                  of a Judgment Against ArcelorMittal, Was Far
                  Too Late To Moot the Case ......................................... 51

            2.    ArcelorMittal's Covenant Was Too Limited ................. 56

III.  The District Court Correctly Entered Summary Judgment ......... 58

      A.    ArcelorMittal Has Waived Any Challenge to the
            Judgment of Noninfringement ............................................. 58

      B.    The District Court Properly Applied the Mandate To
            Hold Invalid Claims 24 and 25 of the RE153 Patent ........... 59

            1.    The District Court Was Correct To Implement
                  This Court's Mandate in *ArcelorMittal I* ..................... 60

            2.    The District Court Did Not Err in Applying
                  This Court's Mandate to Claim 25 ............................... 64

3.     The District Court Did Not Abuse Its
Discretion in Declining to Reopen the Record
on Remand .................................................................... 67

CONCLUSION ......................................................................... 69

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Adarand Constructors, Inc. v. Slater,*
    528 U.S. 216 (2000) ................................................................ 55

*Already, LLC v. Nike, Inc.,*
    133 S. Ct. 721 (2013) ..................................................... *passim*

*Am. Life Ins. Co. v. Stewart,*
    300 U.S. 203 (1937) ................................................................ 50

*ArcelorMittal France v. AK Steel Corp.,*
    989 F. Supp. 2d 364 (D. Del. 2013) ................................... 17, 18

*ArcelorMittal France v. AK Steel Corp.,* 700 F.3d 1314 (Fed.
    Cir. 2012) (*ArcelorMittal I*) ......................................... *passim*

*ArcelorMittal France v. AK Steel Corp.,* 786 F.3d 885 (Fed.
    Cir. 2015) (*ArcelorMittal II*) ....................................... *passim*

*Benitec Australia, Ltd. v. Nucleonics, Inc.,*
    495 F.3d 1340 (Fed. Cir. 2007) ............................................. 52

*Bloom Eng'g Co. v. N. Am. Mfg. Co.,*
    129 F.3d 1247 (Fed. Cir. 1997) ....................................... 39, 60

*Cardinal Chem. Co. v. Morton Int'l, Inc.,*
    508 U.S. 83 (1993) ........................................................... 53, 56

*Cardpool, Inc. v. Plastic Jungle, Inc.,*
    No. 2014-1562, slip. op. (Fed. Cir. Apr. 5, 2016) ................. 33

*Celsis In Vitro, Inc. v. CellzDirect, Inc.,*
    664 F.3d 922 (Fed. Cir. 2012) ............................................... 44

*City of Erie v. Pap's A.M.,*
    529 U.S. 277 (2000) ................................................................ 37

*Danisco U.S. Inc. v. Novozymes A/S,*
    744 F.3d 1325 (Fed. Cir. 2014) ............................................. 57

*Data Gen. Corp. v. Johnson,*
    78 F.3d 1556 (Fed. Cir. 1996) .............................................. 33

*Dow Jones & Co. v. Ablaise Ltd.,*
    606 F.3d 1338 (Fed. Cir. 2010) ............................... 45, 46, 54

*E.E.O.C. v. Westinghouse Elec. Corp.,*
    925 F.2d 619 (3d Cir. 1991) ................................................ 68

*EF Operating Corp. v. Am. Bldgs.,*
    993 F.2d 1046 (3d Cir. 1993) .............................................. 33

*Enzo Biochem, Inc. v. Calgene, Inc.,*
    188 F.3d 1362 (Fed. Cir. 1999) ........................................... 69

*Ernst v. Child & Youth Servs. of Chester Cnty.,*
    108 F.3d 486 (3d Cir. 1997) ................................................ 69

*Fin Control Sys. Pty, Ltd. v. OAM, Inc.,*
    265 F.3d 1311 (Fed. Cir. 2001) ........................................... 53

*Fort James Corp. v. Solo Cup Co.,*
    412 F.3d 1340 (Fed. Cir. 2005) .................................... passim

*Fresenius USA, Inc. v. Baxter Int'l, Inc.,*
    721 F. 3d 1330 (Fed. Cir. 2013) .......................................... 62

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,*
    528 U.S. 167 (2000) ....................................................... passim

*Gould v. Control Laser Corp.,*
    705 F.2d 1340 (Fed. Cir. 1983) ........................................... 50

*HTC Corp. v. IPCom GmbH & Co.,*
    667 F.3d 1270 (Fed. Cir. 2012) ........................................... 44

*Huffman v. Saul Holdings Ltd. P'Ship,*
    262 F.3d 1128, 1133 (10th Cir. 2001)................................... 63

*Janssen Pharmaceutica, N.V. v. Apotex, Inc.,*
    540 F.3d 1353 (Fed. Cir. 2008) ........................................... 57

*Microsoft Corp. v. i4i Ltd. P'Ship,*
    564 U.S. 91 (2011) ................................................................. 62

*Moore v. Bennette,*
    517 F.3d 717 (4th Cir. 2008) ............................................... 64

*Pac. Gas & Elec. Co. v. United States,*
    668 F.3d 1346 (Fed. Cir. 2012) .................................... 31, 68

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,*
    556 F.3d 1294 (Fed. Cir. 2009) .................................... 45, 49

*Rochez Bros., Inc. v. Rhoades,*
    527 F.2d 891 (3d Cir. 1975) ......................................... 31, 68

*Scott v. Iron Workers Local 118,*
    928 F.2d 863 (9th Cir. 1991) ............................................... 51

*Silberman v. Bogle,*
    683 F.2d 62 (3d Cir. 1982) .................................................. 69

*Slimfold Mfg. Co. v. Kinkead Indus., Inc.,*
    810 F.2d 1113 (Fed. Cir. 1987) ......................................... 38

*Toro Co. v. White Consol. Indus., Inc.,*
    383 F.3d 1326 (Fed. Cir. 2004) ......................................... 63

*U.S. Bancorp. Mortg. Co. v. Bonner Mall P'Ship,*
    513 U.S. 18 (1994) ............................................................... 51

*Webb v. City of Philadelphia,*
    562 F.3d 256 (3d Cir. 2009) ............................................... 44

*Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.,*
    522 F.3d 1348 (Fed. Cir. 2008) ......................................... 53

**Statutes**

28 U.S.C. § 1295 ...................................................................... 1

28 U.S.C. § 1331 ...................................................................... 1

28 U.S.C. § 1338........................................................................ 1

35 U.S.C. § 251.............................................................. *passim*

35 U.S.C. § 252.............................................................. *passim*

## STATEMENT OF RELATED CASES

Defendants-Appellees ("Defendants") generally agree with ArcelorMittal's[1] statement of related cases. This appeal is from the United States District Court for the District of Delaware in Civ. No. 10-050-SLR ("the 050 case"). The 050 case was previously appealed to this Court in *ArcelorMittal France v. AK Steel Corp.*, No. 2011-1638, 700 F.3d 1314 (Fed. Cir. 2012) ("*ArcelorMittal I*"). The panel consisted of Judge Dyk, Judge Clevenger, and Judge Wallach.

While the 050 case was on remand, ArcelorMittal France, ArcelorMittal Atlantique et Lorraine, and ArcelorMittal USA LLC filed related cases against AK Steel Corporation (Civ. No. 13-685-SLR ("the 685 case")) and Severstal Dearborn, LLC and Wheeling-Nisshin, Inc. (Civ. No. 13-686-SLR ("the 686 case")) in the United States District Court for the District of Delaware. The 050 case was again appealed, along with the 685 and 686 cases, in *ArcelorMittal France v. AK Steel Corp.*, Nos. 2014-1189, 2014-1190, and 2014-1191, 786 F.3d 885 (Fed.

---

[1] Consistent with Appellants' usage (*see* Blue Br. 1 n.1), as used herein, "ArcelorMittal" includes Plaintiffs-Appellants ArcelorMittal and/or ArcelorMittal Atlantique et Lorraine, as well as ArcelorMittal's predecessor in interest, ArcelorMittal France.

Cir. 2015) (*ArcelorMittal II*).  The panel consisted of Judge Dyk, Judge Wallach, and Judge Hughes.

Counsel for Defendants-Appellees are not aware of any other cases pending in this or any other court that will directly affect or be directly affected by this Court's decision in this appeal.

## COUNTER JURISDICTIONAL STATEMENT

Defendants-Appellees agree the district court had jurisdiction over this case under 28 U.S.C. §§ 1331 & 1338, but disagree that it was divested of jurisdiction.  ArcelorMittal timely appealed a final judgment in a case arising under the patent laws, and the Court has jurisdiction under 28 § 1295(a)(1).

## COUNTERSTATEMENT OF THE ISSUES

1.  Whether the district court correctly found it had subject matter jurisdiction to enter judgment as to claims 24 and 25 of U.S. Patent No. RE44,153 ("the RE153 patent") on remand, when: (1)  ArcelorMittal itself previously represented to this Court, in obtaining a remand of the action, that RE153 had been substituted into the case and asked the Court "to remand the 050 case so that the district court can address infringement of reissue claims 24 and 25" (A5199-5200); and (2) when claims 24 and 25 are substantially identical to original claim 1 and the parties treated the claims as substituted into the case on that basis in the prior proceedings.

2.  Whether the district court correctly found that ArcelorMittal failed to meet its "formidable burden" to show its last-minute covenant

not to sue mooted this case when: (1) ArcelorMittal never moved to dismiss on the basis of the covenant and never briefed or argued its adequacy in the district court; (2) the covenant was expressly conditioned on the district court first resolving ArcelorMittal's motion to amend its complaint in a separate action, which the court did not do until after resolving Defendants' motion for summary judgment, and ArcelorMittal conceded the covenant did not moot the separate action in which ArcelorMittal was enforcing the same patent against Defendant AK Steel; (3) the covenant was offered by ArcelorMittal on the eve of an adverse judgment, after a jury verdict and two appeals effectively resolved ArcelorMittal's claim of infringement in the 050 case; and (4) the covenant failed to protect distributors or indirect customers or protect Defendants from related claims in a second reissue.

3. Whether the district court correctly entered summary judgment of non-infringement and invalidity when that judgment implemented this Court's mandate expressly permitting the limited remaining issues as to infringement and obviousness to be resolved by motion for summary judgment and when ArcelorMittal conceded there

was no genuine dispute of material fact in the trial record concerning either remanded issue.

## INTRODUCTION

ArcelorMittal's third appeal in this matter again attempts to nullify this Court's mandate and the prior jury verdict.  In *ArcelorMittal II*, when this Court affirmed the invalidity of claims 1-23 of the RE153 patent (based on ArcelorMittal's improper broadening of claims in reissue) but vacated the judgment as to claims 24 and 25 based on a determination that they were not broadened, the Court remanded the 050 case for implementation of its earlier mandate in *ArcelorMittal I* as to these two remaining patent claims.  *See id.* at 892.  The *ArcelorMittal I* mandate affirmed the jury's verdict of no infringement under the doctrine of equivalents and its finding of a prima facie case of obviousness, and remanded the 050 case for consideration solely of (1) whether there was evidence of literal infringement and (2) whether ArcelorMittal's evidence of alleged commercial success (which this Court noted had been "before the jury," *ArcelorMittal ,I*, 700 F.3d at 1325) could overcome the prima facie case of obviousness.  Both questions, this Court expressly noted, could be considered through "a

motion for summary judgment … that might obviate the need for a further trial," *id.* at 1326.

Following the remand in *ArcelorMittal II*, the district court implemented this Court's mandate:  It entertained motions for summary judgment establishing that Defendants do not infringe claims 24 and 25 of the RE153 patent and that those claims are invalid as obvious.  ArcelorMittal did not contest, on the record before the district court—a record developed through a full fact and expert discovery period and a five-day jury trial—that there was no evidence of literal infringement and no evidence of commercial success having nexus to the claims.  On the contrary, ArcelorMittal conceded in briefing below that the trial record contained no evidence of any secondary considerations to refute the prima facie case of obviousness. (A5093: "Nor is there testimony in the record concerning secondary considerations of non-obviousness that would apply to Claims 24 and 25, such as commercial success, copying and industry skepticism of the invention.")  Likewise, ArcelorMittal does not contend on appeal that there is any evidence **of record** creating a triable issue of infringement or obviousness, waiving any such contention.

Instead, ArcelorMittal makes a last-ditch effort to avoid entry of the judgment—after a jury trial, two appeals, and a latest round of summary judgment briefing—by now asserting the district court lacked subject matter jurisdiction to adjudicate claims 24 and 25.  First, ArcelorMittal makes the remarkable assertion that the very claims it asked this Court to remand in the last appeal for further proceedings (claims 24 and 25 of RE153) were somehow never in the case in the first place and thus the district court lacked jurisdiction to address them.

Second, ArcelorMittal argues that it placed those claims beyond the district court's reach by an eve-of-judgment, conditional covenant not to sue offered after full briefing and oral argument on Defendants' motions for summary judgment.  ArcelorMittal deliberately made the covenant conditional on the district court first granting a motion for leave to amend its complaint in the 685 case, where it had separately alleged that Defendant AK Steel infringed the same RE153 patent based on post-trial activities.  ArcelorMittal imposed this condition because it did not want to moot that other action—enforcing the same patent claims against AK Steel—until it could substitute in yet another

reissue is obtained from the same original U.S. Patent No. 6,296,805

("the '805 patent") to enforce against Defendants.

ArcelorMittal's continued pursuit of infringement allegations

against AK Steel on another reissue of the original '805 patent exposes

the true purpose behind its latest positions.  ArcelorMittal has no intent

to end its campaign of litigation against AK Steel on patent claims

deriving from the '805 patent.  Rather, it seeks to nullify the jury

verdict and mandates of this Court in its prior appeals so that—after

six years of litigation—it can try to argue in the 685 case that the many

common issues are not subject to issue preclusion, thus denying

Defendants repose (while burdening the courts with relitigation of the

issues).  This assault on the vitality and finality of jury verdicts and

mandates of this Court should not be countenanced.

ArcelorMittal's arguments, and its efforts to thwart

implementation of this Court's prior mandates, are meritless.  Claims

24 and 25 substituted into this case pursuant to Section 252 of the

Patent Code and the parties' stipulation, and were properly before the

district court—a point ArcelorMittal itself embraced in the last appeal,

when it suited its purposes to do so.  Indeed, at ArcelorMittal's urging

in the last appeal, this Court expressly remanded as to claims 24 and 25 for further proceedings consistent with the mandate in ArcelorMittal's first appeal.  The doctrine of judicial estoppel prevents such a bait-and-switch.

And ArcelorMittal's cynical attempt to use a conditional covenant not to sue to moot the case on the eve of judgment—after an adverse jury verdict, two appeals, and full briefing and argument on summary judgment—also fails.  The  conditions imposed on the covenant to avoid mooting ArcelorMittal's separate infringement action against AK Steel on the same patent claims in the 685 case necessarily means the covenant did not moot the present action either.  In any event, the covenant itself was too narrow and far too late under this Court's precedent to divest the district court of subject matter jurisdiction to enter the judgment.

With regard to the merits of the district court's judgment, ArcelorMittal rests on the same argument that this Court rejected in the last appeal: that the reissue proceedings leading to RE153 constitute "new evidence" requiring the district court to depart from this Court's mandate (Blue Br. 43).  As this Court explained, "the

successful prosecution of the RE153 patent is not 'new evidence'
sufficient to trigger the extraordinary circumstances exception to the
mandate rule and the law-of-the-case doctrine," *ArcelorMittal II*, 786
F.3d at 889.  ArcelorMittal simply ignores this.

Finally, ArcelorMittal's assertion of error in the district court's
denial of its request to reopen the record is entirely meritless.  (A12;
A14.)  ArcelorMittal ignores that the decision whether to reopen the
record was committed to the discretion of the district court under
binding precedent of this Court and the Third Circuit.  The district
court was well within its discretion to deny the request.

ArcelorMittal brought, litigated, and tried this case at the time of
its choosing.  It lost.  It has spent the five years since engaged in
procedural maneuvering intended to avoid the preclusive consequences
of that loss.  But it does not, and cannot, contest the fact that when the
law of the case, as set forth in this Court's two mandates, is applied to
the facts of record, the conclusion follows that claims 24 and 25 of the
RE153 patent are not infringed and are invalid.  The district court's
judgment in favor of defendants should be affirmed.

# COUNTERSTATEMENT OF THE CASE

The background of this case is reviewed in this Court's opinions in *ArcelorMittal I*, 700 F.3d at 1317-19, and *ArcelorMittal II*, 786 F.3d at 887-88. Defendants offer this counterstatement because ArcelorMittal's statement fails to provide an accurate account of the record, including the positions ArcelorMittal itself took before the district court and in prior appeals before this Court.

## I.    *ArcelorMittal I*

This case began on January 22, 2010, when ArcelorMittal filed a complaint against Defendants alleging infringement of U.S. Patent No. 6,296,805. (A72-75.) Defendants each counterclaimed for declarations of noninfringment and invalidity. (A88; A95-96; A104-06.)

The patent claims are directed to hot-rolled boron steel sheet that is precoated with an aluminum coating prior to being thermally treated to achieve a "very high mechanical resistance." The patent describes a thermal treatment known as hot stamping, in which the sheet is shaped at high temperature (when it is ductile) and then quickly quenched to achieve a shaped part with high strength.

All of the components of the claims—the boron steel, the thermal treatment resulting in very high mechanical resistance, the precoating before hot stamping, and the use of aluminum coatings to protect steel in high temperature applications—were known in the art prior to the critical date of the '805 patent. *ArcelorMittal I*, 700 F.3d at 1323. As this Court recognized in *ArcelorMittal I*, "ArcelorMittal concedes that 'each element of the invention' was known in the prior art." *Id*.

After a five-day trial in January, 2011, the jury found that none of the Defendants infringed the '805 patent and that all asserted claims of the patent were invalid as both anticipated by the Bano reference[2] and obvious in view of Bano in combination with the French '906 patent[3]. (A3299-3305.)

On appeal, the Court affirmed-in-part, reversed-in-part, vacated-in-part, and remanded. The Court affirmed the district court's construction of "very high mechanical resistance," which requires the claimed steel sheet to have an ultimate tensile strength of at least 1500

---

[2] X. Bano & JP Laurent, *Heat Treated Boron Steels in the Automotive Industry,* XXXV 39TH MWSP CONF. PROC., ISS 673 (1998). (A5203-07.)

[3] French Patent No. 1,297,906.

MPa. *ArcelorMittal I*, 700 F.3d at 1322. The Court reversed the construction of "hot-rolled steel sheet," holding the term means "a steel sheet that has been hot-rolled during its production," including that which is subsequently cold-rolled to final thickness. *Id.* at 1321.

On infringement, the Court affirmed the judgment of non-infringement under the doctrine of equivalents. *Id.* at 1322. However, the Court remanded for the limited inquiry of whether any of the Defendants' products would literally infringe under the broadened construction of "hot-rolled steel sheet." *Id.*

With regard to invalidity, the Court reversed the finding of anticipation but affirmed that the evidence at trial supported a prima facie case of obviousness. *Id.* at 1323. The Court affirmed that the jury permissibly found that the Bano reference disclosed precoating hot-rolled boron steel sheet prior to hot stamping and achieving a very high mechanical resistance. *Id.* at 1322-23. The sole element the Court found missing from Bano, and the reason the Court reversed on anticipation, was aluminum or aluminum alloy as the material to use in precoating. *Id.*

The Court affirmed that a combination of Bano with the French '906 patent—which taught precoating steel with an aluminum or aluminum alloy coating for use in high temperature shaping treatments—established a prima facie case of obviousness. *Id.* The French '906 patent was directed to hot forging, which the Court recognized the jury had properly found analogous to hot stamping, such that the teachings of the French '906 patent concerning the use of aluminum and aluminum alloy precoatings on steel that would be subjected to thermal treatments would be combined with Bano's teaching of precoating boron steel for hot stamping. *Id.* at 1324. The Court thus affirmed the jury's finding that a person of ordinary skill would have been motivated to combine the aluminum precoating disclosed by the French '906 patent with the precoating prior to hot stamping disclosed in Bano to achieve the claimed hot-rolled boron steel sheet thermally treated to a very high mechanical resistance. *Id.*

The Court further held that ArcelorMittal had waived assertion of any alleged objective indicia of nonobviousness other than commercial success. *Id.* at 1325 n.6. As to commercial success, the Court observed that "[a]lthough ArcelorMittal's commercial success evidence was before

the jury, the district court instructed the jury to consider '[c]ommercial success or lack of commercial success of products **covered by the asserted claims**.'" *Id.* at 1325.  In light of the broadened claim construction of "hot-rolled steel sheet," therefore, the Court remanded with instructions to determine whether "the asserted claims of the '805 patent are obvious in light of any evidence of commercial success of hot-rolled steel that is also cold-rolled and that has the required nexus with ArcelorMittal's claims." *Id.* at 1326.  The Court expressly indicated that the district court, on remand, could entertain "a motion for summary judgment on these issues that might obviate the need for a further trial." *Id.*

## II.    Trial Court Proceedings Following Remand in *ArcelorMittal I*

### A.    The RE153 Patent

Months after the jury verdict and the district court's denial of ArcelorMittal's post-trial motions—and over a decade after issuance of the '805 patent—without notifying Defendants or the district court, ArcelorMittal filed an application for reissue of the '805 patent.  (A64.)  ArcelorMittal then pursued this reissue application in parallel with its appeal, without apprising Defendants or this Court.

In the reissue application, ArcelorMittal sought to broaden the claims of the '805 patent. Specifically, ArcelorMittal added a new dependent claim 23 to broaden claims 1-23 of the reissue application so that the claims would encompass steel sheet having an ultimate tensile strength in excess of 1000 MPa. (A4278.)

ArcelorMittal's reissue application issued in April 2013 as U.S. Patent No. RE44,153. (A64.) In addition to claims 1-16 of the RE153 patent, whose language is identical to the same claims in the '805 patent, ArcelorMittal also added claims 17-25. (A67.) Of relevance here, claims 23-25 read:

> 23. The coated steel sheet of claim 1, wherein said mechanical resistance is in excess of 1000 MPa.
>
> 24. The coated steel sheet of claim 1, wherein said mechanical resistance is in excess of 1500 MPa.
>
> 25. The coated steel sheet of claim 24, wherein said coated steel sheet is composed predominantly of martensite.

(*Id.*)

## B.    The 685 and 686 Cases

On the same day the RE153 patent issued, ArcelorMittal filed two new cases against Defendants in the District of Delaware alleging that

acts of infringement occurred after the trial in the 050 case.  In the 685
case, ArcelorMittal asserted the RE153 patent against Defendant AK
Steel.  (685 case, D.I. 1.)  In the 686 case, ArcelorMittal asserted the
same patent against Defendants Severstal and Wheeling-Nisshin.  (686
case, D.I. 1.)

### C.   The First Remand in the 050 Case

Upon remand of the 050 case, ArcelorMittal filed a Motion for
Leave to File a Second Amended and Supplemental Complaint in the
remand proceedings.  ArcelorMittal sought not merely to substitute the
RE153 patent for the now-surrendered '805 patent, but also to add new
parties, a new theory of infringement (based on a new construction of
the patent claims to cover product having an ultimate tensile strength
**below** 1500 MPa), and to allege infringement based on purported "new
infringing acts" post-dating the trial that "at least some of the products
have an ultimate tensile strength greater than 1500 MPa."  (A4231-32;
A4238; A4241.)  ArcelorMittal requested that the district court reopen
discovery in this case because, it alleged, "Defendants have also sold
product which after hot stamping is reported to have UTS of 1500 MPa
or greater."  (A4280.)

- 15 -

In response, Defendants explained they were "willing to stipulate to the substitution of the RE153 patent for the '805 patent," but opposed the motion to the extent ArcelorMittal sought to claim infringement by purportedly new products produced after the trial or to assert patent claims having a broader scope than the claims of the '805 patent under the claim construction affirmed by the Federal Circuit.  (A4306.) Defendants expressly recognized that "[c]laims 24-25 have essentially the same scope as original claim 1 of the '805 patent and should be so treated."  (A4270.)  Defendants explained to the district court that:

> **[A]ll we are dealing with on the reissue is claims that are substantially identical to the original claims, that's the last two claims, 24 and 25.**  Under the reissue statute, Section 252, those claims get substituted, but it does not affect, it shall not affect any action then pending. **We're just swapping those claims and we follow the mandate.**

(A4882[20:25-21:7] (emphasis added).)

At no point did ArcelorMittal argue that claims 24 and 25 should not be or had not been substituted into the 050 case.  To the contrary, in its own description of the remand proceedings to this Court in the *ArcelorMittal II* appeal, ArcelorMittal specifically cited Defendants' proposed stipulation in representing to this Court that the "reissue

patent, by stipulation of the parties (A201-05 [now A4302-07]) was substituted for the '805 patent in the remanded 050 case."  (A5161.)

Following the stipulated substitution of the RE153 patent for the '805 patent, Defendants moved for summary judgment of noninfringement as to all claims.  (A4501-02; A4515-16.)  Defendants cited evidence from the trial record demonstrating that Defendants' steel sheet as sold did not have a mechanical resistance in excess of 1500 MPa.  (A4528-29; A4507-09.)  In its multiple briefs on these issues, ArcelorMittal never once asserted claims 24 and 25 of the RE153 patent were not at issue in the 050 case and should not be adjudicated.

Following briefing and argument, the district court held all claims of the RE153 patent invalid because of ArcelorMittal's improper and deliberate broadening in violation of 35 U.S.C. § 251.  *ArcelorMittal France v. AK Steel Corp.*, 989 F. Supp. 2d 364, 371-72 (D. Del. 2013). The district court also found that "ArcelorMittal concedes (by not addressing) the fact that the trial record has no evidence of past infringement of claim 1 of the '805 patent as construed by the Federal Circuit," *id.* at 368-69, and that "the accused products did not meet the

[very high mechanical resistance] limitation at issue, as construed by the Federal Circuit," *id.* at 370.

ArcelorMittal then filed a Motion to Clarify, or in the Alternative to Alter or Amend, the Judgment Under Rule 59(e) and Local Rule 7.1.5, seeking to modify the Court's Order "such that it does not hold claims 24 and 25 invalid." (A4818.) Again, ArcelorMittal never argued claims 24 and 25 were not at issue in the 050 case or that the district court lacked jurisdiction to invalidate them. It argued only that those claims had not themselves been broadened over claim 1 of the original '805 patent and thus should not have been held invalid under Section 251. (A4820-25.) The district court then issued a further Memorandum Opinion and "[o]rdered that all claims of the RE153 patent are invalid as violative of 35 U.S.C. § 251(d)." (A4871.) ArcelorMittal appealed.

## III. *ArcelorMittal II*

On appeal from the invalidation of claims 1-25 of the RE153 patent under Section 251(d), ArcelorMittal argued that claims 1-23 of RE153 were not broader than the claims of the original '805 patent, despite covering sheet down to 1000 MPa, under a theory that the reissue proceedings constituted "new evidence" altering the meaning of

claims of the original '805 patent.  (A5172-84.)  According to ArcelorMittal, the reissue proceedings negated this Court's decision and mandate in *ArcelorMittal I* and required a new construction of the original '805 patent's claims to reach steel sheet down to 1000 MPa. (*Id.*)  ArcelorMittal also argued that, even were claims 1-23 invalid for impermissible broadening, claims 24 and 25 should not have been held invalid under Section 251(d) because they were not broader than original claim 1 of the '805 patent, and that those claims should be remanded for further proceedings as to infringement.  (A5184-5200.)

Notably, ArcelorMittal never argued that the district court had erred in exercising jurisdiction over claims 24 and 25 in the 050 case. To the contrary, ArcelorMittal itself represented to this Court that the "reissue patent, by stipulation of the parties (A201-05 [now A4302-07]) was substituted for the '805 patent in the remanded 050 case."  (A5161.) Moreover, ArcelorMittal expressly relied upon the substitution of claims 24 and 25 into the 050 case to avoid final judgment should the Court affirm the invalidity of claims 1-23, arguing that "even if only reissue claims 24 and 25 remain, **there is evidence that those claims were infringed during the time period at issue in the 050 case.   The**

**proper remedy is therefore to remand the 050 case so that the district court can address infringement of reissue claims 24 and 25**." (A5199-A5200 (emphasis added)); *see also* Reply Brief of Plaintiffs-Appellants at 27, *ArcelorMittal II*, 786 F.3d 885 (Fed. Cir. 2015) (No. 14-1189) ("[T]he 050 case should be remanded for consideration of that evidence, even if only claims 24 and 25 are ultimately upheld.").

In its decision, the Court adopted ArcelorMittal's representation that RE153 had been substituted by amendment into the 050 case. *ArcelorMittal II*, 786 F.3d at 888 ("On remand, ArcelorMittal amended its complaint to substitute the now-surrendered '805 patent for the RE153 patent."). The Court affirmed that claims 1-23 of the RE153 patent were invalid due to ArcelorMittal's deliberate and unlawful broadening over the '805 patent. *ArcelorMittal II*, 786 F.3d at 892. The Court vacated the judgment that claims 24 and 25 of the RE153 patent are invalid, however, on the ground that those claims have the same scope as original claim 1 of the '805 patent. *See id.* ("[T]he district court erred in invalidating claims 24 and 25, which the parties concede maintain the same scope as the original claims."). The Court then remanded with instructions that the district court resolve the

remaining issues as to claims 24 and 25 of the RE153 patent consistent with the Federal Circuit's opinion and the mandate in *ArcelorMittal I*— *i.e.*, the original remand in the 050 case. *Id.* Thus, consistent with ArcelorMittal's representations, this Court remanded the 050 case to the district court for further proceedings to resolve the limited remaining issues as to the alleged infringement and obviousness of claims 24 and 25 of the RE153 patent.

## IV.   Events Following the Second Appeal

### A.   The RE940 Patent

Again while its appeal was pending, ArcelorMittal prosecuted a further reissue application; specifically, a continuation of the RE153 patent. This application resulted in U.S. Patent No. RE44,940 ("the RE940 patent"), issuing on June 10, 2014. (685 case, D.I. 31-1 at 9.) The two independent claims in the RE940 patent are mostly identical to claim 1 of the '805 patent and claim 24 of the RE153 patent, with the addition of the phrase "wherein said coated steel sheet is in the form of a delivery coil" in independent claim 17 and a statement of the inherent property that "the aluminum or aluminum alloy coating ... prevents decarburization during said subsequent thermal treatment" in independent claim 27. (*Id.* at 13-14.) On remand in the 685 case,

ArcelorMittal sought to amend its complaint to substitute the new

RE940 patent for the RE153 patent.  (685 case, D.I. 31.)

## B.    The Second Remand

Following the remand, Defendants moved in the 050 case (this

case) for judgment of noninfringement and invalidity implementing the

mandate from *ArcelorMittal I*.  Defendants' motion showed there was no

evidence in the trial record of either literal infringement or commercial

success having a nexus to the claimed invention, the two issues

remanded by this Court.  (A4974-83; A4998-5006.)

ArcelorMittal did not dispute either assertion in its opposition to

Defendants' motion.  ArcelorMittal even acknowledged there was no

"testimony in the record concerning secondary considerations of non-

obviousness that would apply to claims 24 and 25, such as commercial

success, copying and industry skepticism of the invention."  (A5093.)

ArcelorMittal opposed the motions on jurisdictional grounds, arguing

that "[c]laims 24 and 25 of the RE153 patent, which are the subject of

Defendants' motions, are not, and have never been, part of the present

case ('the -050 case')" and that "Defendants' current motions fail

because the Court lacks subject matter jurisdiction over unasserted

claims 24 and 25 of the RE153 patent for lack of case or controversy." (A5074.)

At the same time Defendants filed their motions for summary judgment, ArcelorMittal filed a motion to dismiss the 050 case for lack of subject matter jurisdiction. (A4943-44.) ArcelorMittal's motion argued that there was no subject matter jurisdiction because claims 24 and 25 of the RE153 patent had purportedly never been part of the 050 case. By footnote, ArcelorMittal also stated that it was "prepared to grant a covenant against suit to Defendants for all claims of the RE153 patent" (A4956), although it did not provide even a draft, much less an executed version of such a covenant. Nor did ArcelorMittal provide a covenant when it filed its opposition to Defendants' motions for summary judgment. On the day briefing closed on the motions for summary judgment and ArcelorMittal's motion to dismiss, ArcelorMittal for the first time provided a **draft** covenant. (A5103; A5107-08.)

On October 27, 2015, the district court heard oral argument on the parties' motions. (A5246.) Even at the hearing, ArcelorMittal provided no executed covenant. Moreover, ArcelorMittal's counsel explained to

the district court that any covenant would be contingent on the district court granting a motion for leave to amend its complaint in the 685 case, to substitute a newer reissue patent, the RE940 patent, for the RE153 patent.  (A5251[20:24-21:18].)

On November 18, 2015, weeks after the hearing on the motion to dismiss and on the eve of the district court's decision on Defendants' motion, ArcelorMittal submitted to the court a new, revised covenant. (A5220-21.)  ArcelorMittal did not move to dismiss on the basis of this new covenant, and made no effort to show the new covenant was adequate to moot the dispute between the parties.  To the contrary, ArcelorMittal expressly made the covenant conditional upon the court's first resolving its motion to amend its complaint in the 685 case and made clear that the covenant would not moot its enforcement of the RE153 patent until the court resolved that motion.  (A5218.) ArcelorMittal did not explain how a covenant that, by its own terms, did not moot its enforcement of claims 24 and 25 against Defendant AK Steel in the 685 case nonetheless sufficed to moot the 050 case.  Nor did it respond to Defendants' argument, made at the hearing (A5249[11:25-12:25]), that under this Court's decision in *Fort James Corp. v. Solo Cup*

*Co.*, 412 F.3d 1340, 1348-49 (Fed. Cir. 2005), a covenant was too late to moot the case.

Two weeks later, the district court granted Defendants' motions for summary judgment of noninfringement and invalidity, and denied ArcelorMittal's motion to dismiss.  (A2-3.)  In denying the motion to dismiss, the district court explained that "[c]laims 24 and 25 of the RE153 patent are 'substantially identical' to claim 1 of the '805 patent" and  "were asserted in [the 050 case] as a matter of law" pursuant to 35 U.S.C. § 252.  (A10-11.)  The district court explained that ArcelorMittal's proposed "Second Amended and Supplemental Complaint" was not needed to effect such a substitution, noting that "the only reason plaintiffs filed an amended complaint in [the 050 case] was to assert new acts of infringement consistent with claim 23, which impermissibly broadened the scope of the '805 patent under the Federal Circuit's claim construction."  (A11 n.12.)

The district court further found, consistent with this Court's mandate in *ArcelorMittal II*, that "[b]ecause the RE153 patent simply took the place of the '805 patent upon its surrender ... the mandate of

the Federal Circuit in *ArcelorMittal I*, based on the present record,

governs the resolution of claims 24 and 25 of the RE153 patent." (A11.)

As to infringement, the district court noted that ArcelorMittal

relied only upon allegations of post-trial infringing acts and did not

contest that the trial record lacked evidence of infringement. (A12.)

Because the district court had already made clear that it would not

reopen the record in implementing the mandate, the court found "there

are no genuine issues of material fact as to infringement of claims 24

and 25 of the RE153 patent." (*Id.*)

Similarly, for invalidity, the district court rejected ArcelorMittal's

argument that the reissue proceedings meant that it was entitled "to

start with a clean slate, as though no trial and no appeal had over

occurred in Civ. No. 10-050." (A14.) Instead, the district court

implemented the Court's mandate in *ArcelorMittal I* by requiring

ArcelorMittal to identify evidence in the trial record of commercial

success having a nexus to the claims to overcome the prima facie case of

obviousness affirmed in *ArcelorMittal I*. Indeed, as this Court observed

in *ArcelorMittal I*, "ArcelorMittal's commercial success evidence was

before the jury" in the 050 case. 700 F.3d at 1325. The district court

recognized there was no evidence of commercial success having nexus to the claims: "Defendants contend (and plaintiffs concede by not addressing) that plaintiffs only sell flat-rolled steel sheets that have not undergone additional heat treating and have not attained an ultimate tensile strength of 1500 MPa or higher, as required by claim 24." (A14.) "On this record," the district court thus "conclude[d] that plaintiffs have not identified any genuine issues of material fact sufficient to overcome defendants' prima facie case of obviousness." (*Id.*)

Because the district court granted Defendants' motions for summary judgment of noninfringement and invalidity, it concluded that ArcelorMittal's covenant not to sue was moot. (A15.) In the same order, the district court also granted ArcelorMittal's motion for leave to file a first amended complaint in the 685 case, substituting the RE940 patent into that case in place of the RE153 patent. (A3.)

## SUMMARY OF THE ARGUMENT

ArcelorMittal's own representations and behavior confirm that the district court had jurisdiction to enter final judgment of noninfringement and invalidity on claims 24 and 25 of the RE153 patent. In the prior appeal, ArcelorMittal requested a remand "so that

the district court can address infringement of reissue claims 24 and 25."
(A5199-5200.)  ArcelorMittal thus represented to the Court that claims
24 and 25 were at issue, and is judicially estopped from denying that
representation.

ArcelorMittal was correct in the prior appeal.  Not only did the
parties litigate claims 24 and 25 before the district court, but the
substitution of claims 24 and 25 into the case properly implemented
Section 252 of the Patent Act.  Under Section 252, "in so far as the
claims of the original and reissued patents are substantially identical,"
the surrender of the original patent "shall not affect any action then
pending nor abate any cause of action then existing."  35 U.S.C. § 252.
Claims 24 and 25—as the only claims "substantially identical" to the
original claims of the '805 patent—properly substituted into the case.

Recognizing the conflict between its treatment of claims 24 and 25
now, and its prior statements to this Court and the district court,
ArcelorMittal attempts to moot this case with a covenant not to sue
tendered only after briefing and oral argument on Defendants' motions
for summary judgment.  ArcelorMittal's last-ditch attempt to avoid final
judgment fails for at least three separate reasons: First, ArcelorMittal

never moved to dismiss based on the covenant and thus never met its burden to demonstrate the lack of a case or controversy based on the covenant. Second, by its own terms, the covenant was conditional, and did not moot a case involving enforcement of the same patent claims against the same party (Defendant AK Steel), thereby precluding this action from being mooted either. Third, the covenant was too late to divest the district court of jurisdiction and too limited in scope.

ArcelorMittal's arguments that it can thwart the Court's mandate after an adverse jury verdict and two remands, when it is on the brink of a final judgment of noninfringement and invalidity, are completely unprecedented and contrary to the Court's decision in *Fort James*, 412 F.3d at 1348-49. ArcelorMittal fails even to acknowledge this precedent undermining its position. The covenant also failed to protect Defendants' indirect customers and failed to protect Defendants from suits for infringement of the related RE940 patent.

Thus, the district court had jurisdiction, and it was plainly correct on the merits. ArcelorMittal has not challenged the district court's judgment of noninfringement, waiving any such challenge. That judgment should be affirmed as a matter of course.

ArcelorMittal also offers no challenge to the district court's finding that there was no evidence of record showing commercial success having nexus to the claims. Rather, ArcelorMittal essentially repeats the argument from the prior appeal that the prosecution of the RE153 patent is purportedly new evidence that justifies departure from the Court's mandate in *ArcelorMittal I*. But the Court already rejected that argument in *ArcelorMittal II*. *See* 786 F.3d at 889. The district court properly applied the mandate to claims 24 and 25 of the RE153 patent. Claim 24 is identical in scope to original claim 1 of the '805 patent, and claim 25 is substantially identical in scope to claim 24. The district court further properly exercised its discretion to limit the evidence to the developed trial record.

For these and other reasons explained more fully below, this Court should affirm the district court's summary judgment of invalidity and noninfringement, as well as its denial of ArcelorMittal's motion to dismiss.

## **STANDARD OF REVIEW**

Defendants generally agree with ArcelorMittal's statement of the standard of review. However, ArcelorMittal omits that under Federal

Circuit and Third Circuit precedent, "whether a trial court will reopen a case to take more testimony is discretionary with that court." *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 891, 894 n.6 (3d Cir. 1975); *see Pac. Gas & Elec. Co. v. United States*, 668 F.3d 1346, 1354 (Fed. Cir. 2012) ("Absent contrary instructions, a remand for reconsideration leaves the precise manner of reconsideration—whether on the existing record or with additional testimony or other evidence—to the sound discretion of the trial court." (citation omitted)).

## ARGUMENT

ArcelorMittal seeks to thwart the Court's mandate, believing that avoiding a final judgment on Defendants' motions for summary judgment as to claims 24 and 25 of the RE153 patent will lessen the preclusive effect of the trial and subsequent appeal in the 050 case on ArcelorMittal's current case against AK Steel for infringement of the related RE940 patent.  The district court correctly applied the mandate to hold claims 24 and 25 invalid and not infringed.

## I.   The District Court Properly Exercised Jurisdiction Over Claims 24 And 25

ArcelorMittal plays a shell-game with the district court and this Court.  ArcelorMittal now says that "claims 24 and 25 of the RE153

patent had never been asserted in the 050 case." (Blue Br. 34.) But that is not what ArcelorMittal told this Court in the last appeal. Then, ArcelorMittal took the position that "the reissue patent, by stipulation of the parties (A201-05 [now A4302-07]) was substituted for the '805 patent in the remanded 050 case" (A5161) and that "even if only reissue claims 24 and 25 remain, there is evidence that those claims were infringed during the time period at issue in the 050 case." (A5199.) ArcelorMittal expressly requested that the Court "remand the 050 case **so that the district court can address infringement of reissue claims 24 and 25**." (A5199-5200 (emphasis added).) Thus, what ArcelorMittal now asserts as error is the district court's exercise of jurisdiction to do exactly what ArcelorMittal asked this Court to order the district court to do in the previous appeal.

The district court's power to adjudicate claims 24 and 25 of RE153—the only claims of RE153 substantially identical to claim 1 of the original '805 patent—is confirmed by (1) the parties' stipulation, (2) the litigation history here, (3) ArcelorMittal's prior representations to this Court, and (4) this Court's mandate to the district court. ArcelorMittal's assertion that the district court lacked subject matter

jurisdiction over claims 24 and 25 under a theory that those claims were never in the 050 case is belied by the record and bereft of any merit. This latest attempt by ArcelorMittal to avoid a judgment of noninfringement and invalidity should be rejected.

### A. ArcelorMittal Is Bound by Its Representations to This Court That Claims 24 and 25 of the RE153 Patent Were Part of the 050 Case

ArcelorMittal is bound by its representations to this Court, in *ArcelorMittal II*, that claims 24 and 25 were part of the 050 case. This Court has warned litigants that a party "is judicially estopped from taking [a] change of position, on which this court relied in remanding to the district court." *Cardpool, Inc. v. Plastic Jungle, Inc.*, No. 2014-1562, slip. op. at 12 (Fed. Cir. Apr. 5, 2016); *see also Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996). So, too, has the Third Circuit: "a reviewing court may properly consider the representations made in the appellate brief to be binding as a form of judicial estoppel, and decline to address a new legal argument based on a later repudiation of those representations." *EF Operating Corp. v. Am. Bldgs.*, 993 F.2d 1046, 1050 (3d Cir. 1993).

Here, ArcelorMittal clearly and deliberately represented to this Court that claims 24 and 25 were part of the 050 case, in an effort to secure a remand as to those claims, when it told the Court that:

- the "reissue patent, by stipulation of the parties (A201-05 [now A4302-07]) was substituted for the '805 patent in the remanded 050 case" (A5161);

- "even if only reissue claims 24 and 25 remain, there is evidence that those claims were infringed during the time period at issue in the 050 case" (A5199); and

- "[t]he proper remedy is therefore to remand the 050 case so that the district court can address infringement of reissue claims 24 and 25" (A5199-5200).

This Court relied on ArcelorMittal's representations. The Court observed that "ArcelorMittal [had] amended its complaint to substitute the now-surrendered '805 patent for the RE153 patent." *ArcelorMittal II*, 786 F.3d at 888. The Court then affirmed the district court's invalidation of claims 1-23, vacated its invalidation of claims 24 and 25, and remanded the case to the district court "for further proceedings consistent with this opinion and our mandate in *ArcelorMittal I*." *Id.* at 891-92.

Were ArcelorMittal correct that only "claims 1, 2, 5, 7, and 16 of the RE153 patent" were at issue in the 050 case, as it now argues (Blue Br. 34), then this Court would have **affirmed** the district court's

judgment of invalidity in that case, since the Court held in

*ArcelorMittal II* that **all those claims** were invalid for improper

broadening under 35 U.S.C. § 251.  But this Court instead vacated the

judgment as to claims 24 and 25 and remanded for further proceedings

as to those claims in the 050 case because—on ArcelorMittal's

representations and at its urging—this Court understood claims 24 and

25 to be at issue in the 050 case and held those claims not to be

broadened.  Having obtained the remand it asked for in the 050 case for

further proceedings on claims 24 and 25, based on its representation

that claims 24 and 25 were in the 050 case, ArcelorMittal is judicially

estopped from taking the contrary position that those claims were never

actually part of the case.

ArcelorMittal tries to explain away its statements by asserting

that it had really just sought "a remand for further proceedings, in

which those claims, with their validity restored, could be asserted, if

ArcelorMittal chose to do so by amending its complaint."  (Blue Br. 38.)

But this is not what ArcelorMittal said.  It explicitly requested the

Court "remand the 050 case **so that the district court can address**

**infringement of reissue claims 24 and 25**."  (A5199-200 (emphasis

added).)  This is precisely what the district court did, and ArcelorMittal is estopped from arguing that the court's exercise of its power following remand was error.

Moreover, ArcelorMittal's revisionist history makes little sense. Defendant AK Steel's motion for summary judgment of noninfringement in the first remand indicated that all claims of the RE153 patent were at issue (A4539-40) and explained that AK Steel did not infringe the claims limited to a UTS of 1500 MPa or greater (A4531-32).  ArcelorMittal opposed this motion by asserting that it can prove infringement of the claims limited to a UTS of 1500 MPa or greater (*i.e.*, claims 24 and 25) by introducing evidence outside the trial record. (A4591-96.)  ArcelorMittal thus made it clear it was attempting to enforce claims 24 and 25 in the 050 case.  Indeed, if ArcelorMittal had actually believed that claims 24 and 25 were not part of the 050 case, it would have stated in opposition to AK Steel's motion for summary judgment in the first remand that those claims were not at issue.  It would also have asked the district court to amend its judgment in the first remand so as not to address the invalidity of those claims.  And it would have raised the same issue with this Court, asking this Court to

vacate the judgment of invalidity as to claims 24 and 25 on the threshold ground that those claims were (purportedly) never within the jurisdiction of the district court.  But ArcelorMittal did none of these things.

In any event, ArcelorMittal's attempt to change its prior representations is of no moment.  By asking this Court in *ArcelorMittal II* to reverse the district court's judgment of invalidity of claims 24 and 25 in the 050 case on the merits and to remand for further proceedings, ArcelorMittal made clear those claims were properly subject to the court's jurisdiction.  ArcelorMittal cannot now negate that jurisdiction by asserting that it was merely deciding whether "to choose to" subject those claims to the court's jurisdiction.  Federal court jurisdiction was established, and the continuation of jurisdiction does not depend upon the whim of one party.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 174 (2000) ("[V]oluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case."); *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727-28 (2013) (explaining that "the voluntary cessation doctrine applies" when a party attempts to moot a case with a covenant not to sue); *see also City of Erie v. Pap's A.M.*, 529

U.S. 277, 278 (2000) ("[I]nterest in preventing litigants from attempting to manipulate the Court's jurisdiction to insulate a favorable decision from further review counsels against a finding of mootness.").

### B.    Claims 24 and 25 Were Properly Substituted Pursuant to Section 252 of the Patent Act

As the district court recognized (A10-11), following ArcelorMittal's surrender of the '805 patent, claims 24 and 25 of the RE153 patent were substituted into this case pursuant to Section 252 of the Patent Act. Section 252 of the Patent Act provides that when a patent is surrendered for reissue,

> in so far as the claims of the original and reissued patents are ***substantially identical***, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are substantially identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.

35 U.S.C. § 252 (emphasis added).  For purposes of Section 252, "it is the scope of the claim that must be identical, not that the identical words must be used." *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 810 F.2d 1113, 1115 (Fed. Cir. 1987); *see id.* at 1116 ("The standard applied [under § 252] is that of whether a particular change to the claims is

substantive, such that the scope of the claims is no longer substantially identical.").  "An amendment that clarifies the text of the claim or makes it more definite without affecting its scope is generally viewed as identical for the purpose of § 252."  *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997).

Claims 24 and 25 are **the only claims** of the RE153 patent with substantially identical scope to the original claim 1; as this Court affirmed in *ArcelorMittal II*, claims 1-23 were impermissibly broader than the original claims and invalid on that basis.  Indeed, in seeking to preserve the validity of claims 24 and 25 in that appeal, ArcelorMittal conceded that claims 24 and 25 "maintain the same scope as the original claims."  *ArcelorMittal II*, 786 F.3d at 892.  The Court, relying on ArcelorMittal's concession, found that claims 24 and 25 "'repeat[] and separately state[]' the scope of claim 1 of the '805 patent as construed by the district court and later affirmed by this court."  *Id.* at 891 (alterations in original).  Claims 24 and 25 thus appropriately substituted into the 050 case by operation of §252.  (A10-11 ("Claims 24 and 25 of the RE153 patent are 'substantially identical' to claim 1 of the '805 patent, as established by the Federal Circuit in *ArcelorMittal II*

and consistent with the parties' concession. … Under these circumstances, I conclude, first, that claims 24 and 25 of the RE153 patent were asserted in Civ. No. 10-050 as a matter of law.").)

Substitution of claims 24 and 25 into the 050 case is confirmed by the parties' course of conduct after the issuance of the RE153 patent. Upon issuance of that patent, ArcelorMittal moved to amend its complaint to substitute the RE153 patent for the '805 patent and to add additional infringement allegations. (A4231-32; A4246-60.) In response, Defendants stated they were "willing to stipulate to substitution of the RE153 patent for the '805 patent" but that they opposed ArcelorMittal's attempt to add new allegations of infringement by products having an ultimate tensile strength below 1500 MPa and by acts that post-dated the trial in the case. (A4306; A4312-13.)

Defendants expressly recognized that "[c]laims 24-25 have essentially the same scope as original claim 1 of the '805 patent and should be so treated." (A4270.) Defendants explained to the district court that:

> [A]ll we are dealing with on the reissue is claims that are substantially identical to the original claims, that's the last two claims, 24 and 25. Under the reissue statute, Section 252, those

- 40 -

> claims get substituted, but it does not affect, it
> shall not affect any action then pending.  We're
> just swapping those claims and we follow the
> mandate.

(A4882[20:25-21:7].)[4]

Further, Defendants moved in the 050 case for summary

judgment of non-infringement, including non-infringement of claims 24

and 25.  (A4501-02; A4515-16.)  ArcelorMittal did **not** oppose the

motion on the grounds that claims 24 and 25 were not in the case; it

never suggested any such thing.  Instead, ArcelorMittal opposed

Defendants' motion on the merits, asserting that since December 2012

(after the trial), Defendants purportedly "have sold, and are currently

selling, accused products that have been hot stamped to attain a UTS

---

[4] ArcelorMittal wrongly asserts that "Defendants agreed" only claims 1, 2, 5, 7, and 16 of RE153 would be substituted.  (Blue Br. 34-35.) ArcelorMittal cites to Defendants' opposition to ArcelorMittal's motion to amend, where Defendants argued that ArcelorMittal could not "assert new claims" for infringement, as those claims could "be addressed in the new litigations."  (A4306.)  This statement clearly refers to Defendants' opposition to ArcelorMittal's attempt to add new allegations of post-trial infringing acts; it in no way opposes addition of claims 24 and 25.  (A5253[29:12-18].)  To the contrary, Defendants clearly stated their agreement that the substantially identical patent claims of RE153, specifically claims 24 and 25, substituted into the case. (A4882[20:25-21:7].)

greater than 1,500 MPa." (A4591-92.) Further, as to Defendants Severstal and Wheeling-Nisshin, ArcelorMittal argued, albeit incorrectly, that their steel product infringed claims 24 and 25 prior to the 2011 trial. (A4592-93.) Thus, ArcelorMittal itself treated and pursued claims 24 and 25 of RE153 as part of the 050 case.[5] And, as noted above, it continued to treat those claims as part of the 050 case throughout its appeal in *ArcelorMittal II*. ArcelorMittal's attempt to rewrite this history to avoid a judgment of noninfringement and invalidity should be rejected.

## II.    ArcelorMittal's Belated, Conditional Covenant Not to Sue Did Not Divest the Court of Subject Matter Jurisdiction

Recognizing that claims 24 and 25 were part of the 050 case, ArcelorMittal made a last-ditch effort to divest the district court of jurisdiction over the claims, and thereby frustrate implementation of this Court's mandates in *ArcelorMittal I* and *ArcelorMittal II*, by delivering—after full briefing and argument on Defendants' motion for summary judgment and on the eve of judgment—a conditional covenant

---

[5] As, of course, did the district court, which held in the 050 case that all claims of the RE153 patent, including claims 24 and 25, were invalid under Section 251. (A4802.)

not to sue on the RE153 patent. ArcelorMittal's efforts to avoid entry of judgment of noninfringement and invalidity fail for at least three separate reasons: First, ArcelorMittal never moved to dismiss the case based on its belated covenant and thus made no effort to meet its burden to show that the covenant mooted the case. Second, the covenant was conditioned upon the court's first granting its pending motion to amend in the 685 case and hence, by ArcelorMittal's own admission, not immediately effective to moot the parties' dispute over claims 24 and 25 of the RE153 patent. By this very condition, it could not have become effective before the district court entered its judgment of noninfringement and invalidity. And third, ArcelorMittal's covenant was, in any event, both too late and too narrow to divest the district court of jurisdiction to finally resolve this matter.

## A.    ArcelorMittal Failed to Meet Its Burden Before the District Court

ArcelorMittal devotes the bulk of its argument to attempting to explain away the conditional nature of the covenant it ultimately offered. While ArcelorMittal's arguments on this point are without merit, equally fatal is that it never made any such argument to the district court. To the contrary, when ArcelorMittal submitted the

covenant to the court, it made clear that the conditional nature of the covenant was intended to **preserve** the pending infringement action on the same RE153 patent claims in the 685 case. ArcelorMittal made no argument to the district court as to why that same conditionality did not equally preserve the 050 case, and made no motion presenting the issue of the covenant's adequacy to the district court. (A5218.)

This Court has repeatedly held that a party cannot raise on appeal an argument it did not clearly present below. *See*, *e.g.*, *HTC Corp. v. IPCom GmbH & Co.*, 667 F.3d 1270, 1281-82 (Fed. Cir. 2012); *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012). Third Circuit law is in accord. *See, e.g., Webb v. City of Philadelphia*, 562 F.3d 256, 263 (3d Cir. 2009).

Because ArcelorMittal's arguments concerning the adequacy of its conditional covenant are new arguments never presented to the district court, they should not be permitted. ArcelorMittal's failure to argue the adequacy of its covenant to the district court is particularly glaring because it bore the burden of establishing the adequacy of a covenant. As the Supreme Court recently stated, a party "claiming that its voluntary compliance moots a case," such as by issuance of a covenant

not to sue, "bears the formidable burden of showing that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Already*, 133 S. Ct. at 727 (quoting *Friends of the Earth*, 528 U.S. at 190).

The mere delivery of a covenant not to sue does not meet this burden or suffice to moot an action. Among other things, "whether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009). ArcelorMittal's burden is particularly high here, as it asserts that a covenant divests the district court of jurisdiction over a case tried to a jury and twice remanded by this Court for narrow further proceedings to reach final judgment as to noninfringement and invalidity.

ArcelorMittal cites *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1345 (Fed. Cir. 2010) to try to shift onto Defendants the burden to prove the existence of a justiciable controversy throughout the litigation (Blue Br. 30), but it fails to address the Supreme Court's more recent and contrary authority in *Already*. Nor does *Dow Jones* even support ArcelorMittal's assertions. There, the party issuing the covenant moved

to dismiss claims on the basis of the covenant and presented argument to the district court concerning the adequacy of the covenant.  *See* 606 F.3d at 1344, 1345-46.  ArcelorMittal did neither.  And nothing in *Dow Jones* supports the notion that a plaintiff can seek reversal of a district court's rejection of a proffered covenant based on arguments never presented to the district court.

As shown below, ArcelorMittal's belated and conditional covenant did not, in any event, suffice to moot the instant case.  But ArcelorMittal's failure to give the district court even the opportunity to consider its arguments concerning the purported adequacy of the conditional covenant itself warrants rejection of these arguments, which should not be advanced for the first time on appeal.

## B.   ArcelorMittal's Conditional Covenant Did Not Moot the Parties' Dispute Over the RE153 Patent

The Supreme Court has made clear that the burden on a litigant attempting to moot a case through unilateral action such as a covenant

not to sue is "formidable." *Already,* 133 S. Ct. at 727 (citing *Friends of the Earth).*[6] As the Court explained in *Friends of the Earth*,

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways. In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct **is stringent**: A case might become moot **if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur**. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

528 U.S. at 190 (emphasis added; internal quotations and emendations omitted).

The covenant not to sue upon which ArcelorMittal relies was expressly conditioned on the district court's first resolving ArcelorMittal's motion to amend in the co-pending 685 case against

---

[6] *See id.* ("Nike dismissed its claims with prejudice and issued its covenant, calling into question the existence of any continuing case or controversy.  Under our precedents, it was Nike's burden to show that it 'could not reasonably be expected' to resume its enforcement efforts against Already.").

Defendant AK Steel. Although ArcelorMittal now represents that "[t]he covenant itself was unconditional" (Blue Br. 24; *see id.* at 2, 30), ArcelorMittal submitted the covenant to the district court with the following explicit reservation in a cover letter:

> As stated at the hearing, Arcelor tenders the covenant **conditioned on resolution of the motion to amend** (D.I. 31) in the 685 case. As explained at the hearing, **this condition is necessary to avoid mooting the 685 case** and thereby divesting the Court of jurisdiction. Consequently, Arcelor stands ready to deliver the covenant unconditionally upon resolution of the motion.

(A5218 (emphasis added).) Thus, ArcelorMittal made clear in submitting the covenant not to sue that the covenant was **not** immediately effective and did **not** moot its action against AK Steel for infringement of claims 24 and 25 in the 685 case. In its own words, ArcelorMittal said merely that it "stands ready to deliver the covenant unconditionally **upon resolution of the motion**" (*id.* (emphasis added)), an event that did not occur until the district court had also entered summary judgment of noninfringement and invalidity.

The conditional nature of ArcelorMittal's covenant is fatal to its argument. A covenant that does not preclude future enforcement is

insufficient to moot a case. *See Revolution Eyewear*, 556 F.3d at 1300. And a party seeking to moot a case through a covenant has the "burden to show that it 'could not reasonably be expected' to resume its enforcement efforts against [the defendant]." *Already*, 133 S. Ct. at 727 (citation omitted). But here, ArcelorMittal admits that the conditional nature of its covenant meant that it was **continuing to enforce claims 24 and 25** of the RE153 patent in the 685 case.[7] Thus, a necessary precondition for mooting the case—cessation of all enforcement of claims 24 and 25 of the RE153 patent—never occurred before the district court's entry of judgment of noninfringement and invalidity.

ArcelorMittal never explains in its opening brief how its covenant not to sue could moot the 050 case when, by its own terms, it did not

---

[7] In an effort to concoct an argument that claims 24 and 25 also were not pending in the 685 and 686 cases, ArcelorMittal makes the remarkable assertion that it "had not asserted, and had no intention of asserting, claims 24 and 25 of the RE153 patent against Defendants." (Blue Br. 24.) But following remand from this Court in *ArcelorMittal II*, the only claims remaining in RE153 were claims 24 and 25; the rest had been invalidated. Thus, ArcelorMittal's acknowledgment the 685 and 686 cases remained alive and justiciable necessarily means it was enforcing those claims against Defendants.

moot the 685 case, a case involving enforcement of the same patent claims (claims 24 and 25 of the RE153 patent) against the same party (Defendant AK Steel). To the contrary, ArcelorMittal's concession that the covenant did not deprive the district court of jurisdiction to decide ArcelorMittal's motion to amend in the 685 case necessarily means the court also had jurisdiction to decide Defendants' motions for summary judgment in the 050 case. ArcelorMittal's objection is simply that the district court decided Defendants' motions before Plaintiffs'. But ArcelorMittal cannot dictate the order in which a district court decides motions on its docket; that lies within the sound discretion of the district court. *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983) ("[D]istrict courts have broad discretionary powers to control their dockets."); *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937) ("A court has control over its own docket. In the exercise of a sound discretion it may hold one lawsuit in abeyance to abide the outcome of another, especially where the parties and the issues are the same." (citations omitted)).[8]

---

[8] Even if the covenant later became effective to moot this appeal, the Court should not vacate the judgment below. In deciding whether to (continued...)

## C.  ArcelorMittal's Covenant Was Both Too Late and Too Narrow To Moot the Case

Even were ArcelorMittal's covenant unconditional, it still would have been inadequate to deprive the district court of jurisdiction over Defendants' invalidity defenses because it was both too late and too limited to moot the parties' dispute.

### 1.  ArcelorMittal's Covenant, Offered on the Cusp of a Judgment Against ArcelorMittal, Was Far Too Late To Moot the Case

This Court has held that a patentee cannot use a covenant not to sue to moot an infringement case after trial in order to avoid an adverse final judgment.  In *Fort James*, the Court addressed the effect of a covenant not to sue submitted by the patentee after a jury verdict of non-infringement and in the face of a motion to declare the patent

---

vacate a judgment when a case becomes moot on appeal, "[t]he principal condition to which [the Supreme Court] ha[s] looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action." *U.S. Bancorp. Mortg. Co. v. Bonner Mall P'Ship*, 513 U.S. 18, 24 (1994).  "[A]n appellate court should not vacate a lower court opinion in a moot case in the narrow situation in which the appellant, having lost in the court below and desiring to avoid the collateral estoppel effects of the lower court decision, causes his appeal to become moot." *Scott v. Iron Workers Local 118*, 928 F.2d 863, 865 (9th Cir. 1991).  Here, any mootness would be due to ArcelorMittal's voluntary actions attempting to avoid preclusive effects of the judgment below. The Court should therefore not vacate the judgment.

unenforceable.  *See* 412 F.3d at 1345.  The district court had dismissed the unenforceability counterclaim for lack of jurisdiction, but this Court reversed.  The Court distinguished cases affirming dismissal when the covenant "was filed prior to consideration or resolution of the underlying infringement claim," because "[i]n such circumstances, the promise not to sue obviated any reasonable apprehension that the declaratory judgment plaintiff might have of being held liable for its acts of infringement."  *Id.* at 1348.  By contrast, the Court held, the covenant in *Fort James* "had no effect on Fort James's claim for infringement, because the controversy had already been resolved by the jury's verdict."  *Id.*  Thus, once infringement claims have been tried to a jury, a covenant not to sue does not deprive a court of jurisdiction to resolve the patent's validity.  *See also Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1347 (Fed. Cir. 2007) (affirming dismissal based on covenant given "before a trial and the considerable effort connected therewith had taken place").

ArcelorMittal's infringement claim in the 050 case was fully tried. The jury returned a verdict of no infringement, and this Court affirmed that finding as to the doctrine of equivalents, remanding solely for

consideration of literal infringement. *See ArcelorMittal I*, 700 F.3d at 1319, 1322. And ArcelorMittal had conceded (by not contesting), following remand in *ArcelorMittal I*, that there was no evidence in the trial record of literal infringement, and again in its opposition to Defendants' motion for summary judgment below, well before it submitted its covenant not to sue. (A4797-98; A12.) Thus, by the time ArcelorMittal proffered its covenant, the merits of its infringement claims in the 050 case had been resolved. As in *Fort James*, ArcelorMittal proffered its covenant only after it had lost, when Defendants no longer had a "reasonable apprehension" they might be held liable in the case. As the holding in *Fort James* makes clear, such a belated covenant does not preempt the court's power to resolve Defendants' invalidity counterclaims and defenses.[9]

---

[9] It is well settled that resolution of infringement claims on the merits does not deprive a court of jurisdiction to adjudicate validity. *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 102-03 (1993); *Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1366-67 (Fed. Cir. 2008) (remanding for determination of unenforceability after affirming judgment of noninfringement); *Fin Control Sys. Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1320-21 (Fed. Cir. 2001) (remanding for validity after affirming judgment of noninfringement).

ArcelorMittal fails to confront the circumstances under which it offered the covenant, and wrongly cites *Dow Jones* to argue that its "proffer of a covenant eliminated subject matter jurisdiction." (Blue Br. 32.) But the patentee in *Dow Jones* offered a covenant not to sue long before any trial in the matter, and before a motion for summary judgment had been filed. *See* 606 F.3d at 1344. Moreover, in holding that a covenant offered at that time divested the district court of subject matter jurisdiction, this Court distinguished the circumstances from "the exception … this Court carved out in *Fort James*" where "the covenant not to sue was not offered by the patentee until after the jury had determined that the patent was not infringed." *Id.* By recognizing the longstanding exception of *Fort James*—which ArcelorMittal studiously ignores[10]—the Court's decision in *Dow Jones*, if anything, undercuts ArcelorMittal's argument.

Indeed, the situation here is even more extreme than in *Fort James*, because here the case has not only been fully tried, it has also

---

[10] ArcelorMittal never addresses *Fort James*, despite the fact that it is precedent of this Court squarely on point, and was specifically raised by Defendants in the district court. (*See* A5249[11:25-12:11]; A5225-26.)

been reviewed twice on appeal.  The Supreme Court has warned that "[i]t is no small matter to deprive a litigant of the rewards of its efforts, particularly in a case that has been litigated up to Court and back down again." *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 224 (2000). "Such action on grounds of mootness would be justified only if it were absolutely clear that the litigant no longer had any need of the judicial protection that it sought." *Id*.

The Supreme Court's warning is directly applicable here.  At the very same time ArcelorMittal seeks to moot this case, and thereby avoid a final judgment, it is pursuing an action against Defendants in the district court for infringement of the closely related RE940 patent, a continuation of the reissue application giving rise to the RE153. ArcelorMittal has openly acknowledged that its purpose in mooting this case is to attempt to nullify the effect of the jury's verdict and this Court's mandates so as to pursue its claims of infringement under the RE940 reissue without regard to the preclusive effect of a final judgment in the 050 case.  (*See, e.g.*, A5086-87; A5243-44[6:14-12:13].) ArcelorMittal should not be permitted to use an eve-of-judgment covenant—proffered after a jury trial, two appeals, and motions for

summary judgment—to wipe the slate clean after six years of litigation and deny Defendants the protections afforded by the doctrines of res judicata and collateral estoppel. *See Cardinal Chem.*, 508 U.S. at 100-01 (warning of the "wasteful consequences of relitigating the validity of a patent after it has once been held invalid in a fair trial" and "the danger that the opportunity to relitigate might, as a practical matter, grant monopoly privileges to the holders of invalid patents").

### 2.    ArcelorMittal's Covenant Was Too Limited

Further, ArcelorMittal's conditional covenant was inadequate to resolve the dispute between the parties because it was too limited: it did not protect Defendants' indirect customers from claims of infringement under the RE153 patent and did not protect Defendants against claims of infringement under the related RE940 patent.

Although the covenant purports to protect Defendants' direct customers, Defendants' potential liability to indemnify indirect customers presents a separate controversy from Defendants' direct liability for infringement. The Supreme Court has explained that a covenant may suffice to moot a controversy where it "is unconditional and irrevocable," and "reaches beyond [the alleged infringer] to protect

[its] ***distributors and customers***," and "covers not just current or
previous designs, but any colorable imitations." *Already*, 133 S. Ct. at
728 (emphasis added); *see generally Janssen Pharmaceutica, N.V. v.
Apotex, Inc.*, 540 F.3d 1353, 1363 (Fed. Cir. 2008) (covenant protected
"affiliates, suppliers, and downstream customers").  The covenant
proffered by ArcelorMittal does not even purport to grant such
protection, and ArcelorMittal did not attempt to meet its burden to
show that it is "absolutely clear," *Friends of the Earth*, 528 U.S. at 190,
that Defendants are not potentially subject to indemnification claims
from indirect customers subject to an infringement action brought by
ArcelorMittal.

Nor does the proffered covenant protect Defendants from
allegations of infringement under the related RE940 patent.  "[A]
history of patent litigation between the same parties involving related
technologies, products, and patents is another circumstance to be
considered, which may weigh in favor of the existence of subject matter
jurisdiction." *Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1331
(Fed. Cir. 2014).  ArcelorMittal's covenant is explicitly "limited to the
RE153 Patent and shall not apply with respect to any patent related to

the RE153 Patent, including U.S. Reissued Patent No. RE44,940."

(A5221.) Given that the RE940 patent is— like the RE153 patent—a

reissue of the same '805 patent originally enforced against Defendants

in the 050 case and claims substantially the same subject matter,

ArcelorMittal's failure to covenant not to sue on the RE940 patent also

makes the covenant inadequate to moot the present dispute.

## III. The District Court Correctly Entered Summary Judgment

### A. ArcelorMittal Has Waived Any Challenge to the Judgment of Noninfringement

ArcelorMittal has not contested the judgment of noninfringement

in its opening brief. Therefore, any challenge to that judgment is

waived and the district court's judgment should be affirmed.

In any event, the district court correctly recognized "there are no

genuine issues of material fact as to infringement of claims 24 and 25 of

the RE153 patent" based on the trial record. (*See* A12; *see also* A4797-

98: "ArcelorMittal concedes … the fact that the trial record has no

evidence of past infringement of claim 1 of the '805 patent as construed

by the Federal Circuit.") At trial, ArcelorMittal's counsel conceded "AK

Steel's products are a little bit less than 1500 megapascals"

(A5022[126:4-8]), such that AK Steel could not literally infringe. (*See*

A5037[1125:5-7]; A5028[465:3-16].)  Further, ArcelorMittal offered no

evidence that any of Severstal and Wheeling-Nisshin's customers heat

treated their product to achieve a tensile strength of 1500 MPa or

greater, let alone that Severstal or Wheeling-Nisshin had induced such

conduct.  Because the trial record is devoid of evidence of infringement,

the district court correctly entered summary judgment of

noninfringement.

### B.    The District Court Properly Applied the Mandate To Hold Invalid Claims 24 and 25 of the RE153 Patent

ArcelorMittal does not contest that the trial record is devoid of

evidence showing commercial success having a nexus to the asserted

claims, as would be necessary under this Court's mandate to overcome

the established prima facie case of obviousness.  Rather, ArcelorMittal

attacks the district court's judgment of invalidity on two grounds.  First,

it argues that the district court should not have been "constrained by

the *ArcelorMittal I* mandate" because the reissue proceedings giving

rise to the RE153 patent purportedly changed the evidence relevant to

obviousness and nullified the mandate.  (Blue Br. 42.)  Second, it argues

that the district court erred "with respect to claim 25," because it

purportedly "failed to consider the new 'composed predominantly of

martensite' limitation" of the claim.  (*Id*.)  Both arguments are meritless.

### 1.    The District Court Was Correct To Implement This Court's Mandate in *ArcelorMittal I*

ArcelorMittal does not dispute that claim 24 of the RE153 patent is identical in scope to claim 1 of the original '805 patent.  Nor could it. Claim 24 of the RE153 patent simply substitutes an express reference to 1500 MPa for the "very high mechanical resistance" of original claim 1.  Since this Court has twice affirmed the construction of "very high mechanical resistance" as 1500 MPa or above, claim 24 is thus identical in scope.  *See Bloom Eng'g*, 129 F.3d at 1250 ("An amendment that clarifies the text of the claim or makes it more definite without affecting its scope is generally viewed as identical for the purpose of § 252."). Accordingly, this Court's mandate in *ArcelorMittal I* affirming the prima facie case of obviousness of original claim 1 and remanding for consideration only of commercial success was fully applicable to claim 24 of the reissue.

As to claim 24, ArcelorMittal argues only that the fact of the reissue negates this Court's mandate and entitles ArcelorMittal to present an entirely new nonobviousness case to a new jury.

ArcelorMittal asserts the reissue proceedings themselves constitute "new evidence" requiring departure from the mandate. (Blue Br. 43.) This is the same argument the Court rejected in *ArcelorMittal II*. In that case, the Court conclusively determined that "[t]he successful prosecution of the RE153 patent is **not** 'new evidence' sufficient to trigger the extraordinary circumstances exception to the mandate rule and the law-of-the-case doctrine." *ArcelorMittal II*, 786 F.3d at 889 (emphasis added). While the portion of the mandate ArcelorMittal seeks to negate is different in the two appeals—in the earlier, this Court's ruling on claim construction; and in the latter, this Court's ruling on obviousness—the legal question is the same: do reissue proceedings initiated by a patentee constitute "new evidence" that the patentee may rely upon to negate an unfavorable mandate. This Court has already answered that question in the negative.

Moreover, ArcelorMittal fails to explain how the mere grant of the RE153 patent, without any narrowing of the asserted claims, is relevant evidence to validity. Contrary to ArcelorMittal's suggestion (Blue Br. 43), the grant of a reissue does not raise the burden of proving invalidity. That burden is always by clear and convincing evidence.

*Microsoft Corp. v. i4i Ltd. P'Ship*, 564 U.S. 91, 95 (2011). ArcelorMittal cites *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F. 3d 1330, 1342 (Fed. Cir. 2013), to allege that the district court was required to consider the reissue as an "intervening legal development" relevant to the validity of claims 24 and 25. (Blue Br. 43-44.) However, *Fresenius* stands for the unremarkable proposition that when an asserted patent claim is cancelled (or substantially amended such that is no longer identical in scope to the original claim), "the patentee's cause of action [on that asserted claim] is extinguished and the suit fails." 721 F.3d at 1340. This principle has no application here, where the reissue patent contains "substantially identical" claims, leaving the pending infringement action unabated.

This Court's mandate in *ArcelorMittal II* alone suffices to defeat ArcelorMittal's argument. The Court in *ArcelorMittal II* remanded claims 24 and 25 for "further proceedings consistent with this opinion and **[the] mandate in ArcelorMittal I**," 786 F.3d at 891 (emphasis added). The purported "new evidence" ArcelorMittal relies upon—the reissue proceedings giving rise to the RE153 patent—is not new at all as to the mandate in *ArcelorMittal II*. Rather, those reissue

proceedings predate *ArcelorMittal II*. The reissue proceedings thus cannot provide any reason, much less a legal obligation, for the district court to depart from the mandate in *ArcelorMittal II*. Because that mandate instructed the district court on remand to implement the mandate in *ArcelorMittal I*, 786 F.3d at 892, the court was correct to do so.

Allowing a patentee to use reissue proceedings to nullify a jury verdict of invalidity would gravely threaten the ability of district courts to render, and this Court to review, final judgments. Under ArcelorMittal's proposed approach, any time a patentee lost at trial, it could then use reissue proceedings to concoct "new evidence" nullifying the effect of that judgment and this Court's review. It is for this reason that departures from the law of the case doctrine—and the mandate rule—"are rare" and "exceptionally narrow." *Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1336 (Fed. Cir. 2004); *Huffman v. Saul Holdings Ltd. P'Ship*, 262 F.3d 1128, 1133 (10th Cir. 2001). The doctrine does not permit a losing party to create its own "new evidence," such as through the use of reissue proceedings, and then rely on that belated creation to nullify a prior mandate. *See Huffman*, 262 F.3d at

1133 (new evidence exception requires "significant new evidence that was not earlier obtainable through due diligence but has since come to light"); *accord Moore v. Bennette*, 517 F.3d 717, 727 n.2 (4th Cir. 2008) (same).  The "new evidence" must "differ[] materially from the evidence of record when the issue was first decided and … provide[] less support for that decision." *ArcelorMittal II*, 786 F.3d at 889 (citation omitted). This Court in *ArcelorMittal II* was clear: "The successful prosecution of the RE153 patent is not 'new evidence' sufficient to trigger the extraordinary circumstances exception to the mandate rule and the law-of-the-case doctrine." *Id.*

2.    The District Court Did Not Err in Applying This Court's Mandate to Claim 25

ArcelorMittal's argument that the district court erred in applying this Court's mandate to claim 25 has no merit.  According to ArcelorMittal, the limitation of claim 25 that the steel sheet be "composed predominantly of martensite" means that "claim 25 is not 'substantially identical' to any claim of the original patent," and "does not have effect continuously from the date of the original patent."  (Blue Br. 48.)  But ArcelorMittal's attempt to give patentable weight to the additional limitation of claim 25 is at odds with its representations to

this Court in the last appeal. As discussed above, ArcelorMittal specifically represented to this Court that RE153, including claims 24 and 25, had been substituted for the '805 patent in the 050 case. (A5161; A5199-5200.) Indeed, in doing so, ArcelorMittal expressly told this Court that the claims were substantially identical to original claim 1 in supporting the Court's jurisdiction to consider their validity on the merits:

> If the reissue and original claims are not "substantially identical," the district court should not have allowed substitution of the RE153 patent in the 050 case, and instead should have considered whether that case should be abated, rather than ruling on the RE153 patent's validity.

(A5163 n.7.)[11]

Relying on ArcelorMittal's representations, this Court found that both claims 24 and 25 "'repeat[] and separately state[]' the scope of claim 1 of the '805 patent as construed by the district court and later affirmed by this court" and on that basis reversed the court's

---

[11] ArcelorMittal was arguing that the claims of the RE153 patent could not have been impermissibly broadened under Section 251 because "[o]n remand, the 050 case proceeded with the substitution of the RE153 patent for the '805 patent" pursuant to Section 252, which requires that the claims are "substantially identical." (A5163.)

invalidation of those claims under Section 251 and remanded for further proceedings consistent with its mandate in *ArcelorMittal I*. *ArcelorMittal II*, 786 F.3d at 891 (alterations in original). ArcelorMittal cannot now reverse course and argue that claim 25 is not substantially identical to the original claims in order to avoid the mandate of this Court.

Moreover, ArcelorMittal is wrong that the limitation to steel "composed predominantly of martensite" distinguishes claim 25 from the prima facie case of obviousness affirmed by this Court in *ArcelorMittal I*. (Blue Br. 40-41.) The prima facie case affirmed in *ArcelorMittal I* involved application of the aluminum coating disclosed in the French '906 patent **to the hot-stamped** boron steel sheet disclosed in Bano. *ArcelorMittal I*, 700 F.3d at 1322 ("[T]he parties agree that [Bano] discusses hot-stamping boron steel."). The discussion of hot forging in *ArcelorMittal I* quoted by ArcelorMittal arose in this Court's analysis of whether hot forging and hot stamping were sufficiently analogous to support the jury's finding that a skilled artisan would use the aluminum coating, taught in the French '906 patent to protect steel during hot forging, for the pre-coating before hot stamping

describing in Bano.  *Id.* at 1234.  Thus, the Court affirmed the prima

facie case that "a person of ordinary skill in the art would have had the

knowledge to combine the aluminum coating disclosed by the French

'906 patent with the pre-coating that the jury found Bano disclosed and

would have expected to succeed."  *Id.*

In short, what this Court found prima facie obvious in

*ArcelorMittal I* was boron steel sheet pre-coated with an aluminum or

aluminum alloy coating **and hot-stamped to very high mechanical**

**resistance**.  ArcelorMittal does not argue here, and has not argued

below, that such hot-stamped boron steel sheet is not composed

predominantly of martensite.  The Bano article itself expressly

described the hot-stamped boron steel sheet as "**totally martensitic**."

(A5206 (emphasis added).)   Thus, the Court's mandate in *ArcelorMittal*

*I* was directly and equally applicable to claim 25.  ArcelorMittal's

failure to adduce evidence of commercial success is fatal to that claim as

well.

### 3.   The District Court Did Not Abuse Its Discretion in Declining to Reopen the Record on Remand

The district court acted well within its discretion in declining to

reopen the record and evaluate ArcelorMittal's purported post-trial

evidence of commercial success. ArcelorMittal's brief fails to even mention the relevant standard of review on appeal.

Under both Federal Circuit and Third Circuit law, "whether a trial court will reopen a case to take more testimony is **discretionary** with that court." *Rochez Bros. Inc. v. Rhoades*, 527 F.2d 891, 894 n.6 (3d Cir. 1975) (emphasis added); *see Pac. Gas & Elec. Co. v. United States*, 668 F.3d 1346, 1354 (Fed. Cir. 2012) ("Absent contrary instructions, a remand for reconsideration leaves the precise manner of reconsideration—whether on the existing record or with additional testimony or other evidence—to the sound discretion of the trial court." (citation omitted)).

ArcelorMittal's sole argument for reopening the record is that it wanted another opportunity to develop evidence of commercial success. But a remand is not an opportunity for "a litigant who ... has neglected to produce evidence to support a desired finding" to get "two bites of the apple." *E.E.O.C. v. Westinghouse Elec. Corp.*, 925 F.2d 619, 631 (3d Cir. 1991).

Further, as this Court has previously observed, "ArcelorMittal's commercial success evidence was before the jury" in the 050 case.

*ArcelorMittal I*, 700 F.3d at 1325.  ArcelorMittal conceded below that that evidence was inadequate to overcome the prima facie case of obviousness.  (A5093: "Nor is there testimony in the record concerning secondary considerations of non-obviousness that would apply to Claims 24 and 25, such as commercial success, copying and industry skepticism of the invention.")

ArcelorMittal's desire to take a second bite at the apple is not a reason to reopen the record.  And fatal to ArcelorMittal's argument, it certainly does not render the district court's refusal to reopen the record an abuse of discretion.  *See Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1380 (Fed. Cir. 1999) (denial of motion to reopen record was not abuse of discretion); *Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486, 499 (3d Cir. 1997) (same); *Silberman v. Bogle*, 683 F.2d 62, 66 (3d Cir. 1982) (same).

## CONCLUSION

For the foregoing reasons, and those stated in the district court's opinion, this Court should affirm the district court's judgment.

Dated:  April 28, 2016

Respectfully submitted,

/s/ Christopher N. Sipes
Christopher N. Sipes
Roderick R. McKelvie
Jeffrey H. Lerner
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, DC  20001
(202) 662-6000

*Attorneys for Defendants-Appellees*

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 28, 2016, the foregoing brief was filed with the Court using the Court's electronic case filing system, which will send notification to all registered users.


<u>/s/ Christopher N. Sipes</u>
*Counsel for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

2.      The brief contains 13,818 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

3.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

4.      This brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Century Schoolbook font.


/s/ Christopher N. Sipes
*Counsel for Defendants-Appellees*